IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SAMUEL BUCHBINDER | * | |
| v. | * | Civil No. JFM-03-2945 |
| RONY NATANZON | * | |

MEMORANDUM

In this action Samuel Buchbinder seeks enforcement of an indemnity agreement he made with Rony Natanzon. Buchbinder and Natanzon have each filed a motion for summary judgment. Natanzon's motion will be granted, and Buchbinder's motion will be denied.

I.

Buchbinder and Natanzon formerly owned various business entities together. On July 12, 2002, after a dispute between them resulted in litigation, they entered into a "Memorandum of Understanding" ("MOU") to dissolve their business relationship. The MOU contained the following provision:

> Buchbinder and Natanzon shall own ERN Israel 50%-50% and said stock or membership ownership interests shall be promptly documented and issued to Buchbinder and Natanzon. In consideration of the immediate transfer of said Buchbinder 50% interest, Natanzon guarantees personally that he will reimburse Sam Buchbinder without offset demand or counterclaim any draw on the $1,000,000 letters of credit with all costs and attorneys fees of collection.

Buchbinder had applied for the letters of credit referred to in the MOU in 2001 on behalf of an Israeli company, ERN No. 1 Ltd. ("ERN Israel"), in which he owned a 50% interest. The two letters, worth $500,000 each, were issued by Swiss bank UBS AG ("UBS") in favor of an Israeli bank, Bank Leumi, to secure certain financial obligations of ERN Israel. Under the terms of the letters, Buchbinder agreed to reimburse UBS the amount of any draw on the letters. He

secured this obligation by posting $318,608 in cash and 85,000 shares of stock in another company as collateral.

The letters of credit were originally set to expire on January 31, 2002. Under the terms of the letters, the written consent of both Buchbinder and UBS was required to modify the expiration date. In late 2001 Bank Leumi asked UBS to extend the letters of credit to January 31, 2003, and Buchbinder agreed to the extension. UBS sent an electronic confirmation to Bank Leumi confirming an extension of the letters of credit but erroneously typed the amended expiration date as *December* 31, 2003, instead of January 31, 2003. On January 29, 2003, Bank Leumi notified UBS that it considered the letters of credit as valid and in force until December 31, 2003. In response, UBS advised Bank Leumi of the typographical error in the electronic notification and the correct expiration date of January 31, 2003, and asked Bank Leumi to agree to cancel the letters of credit as of January 31, 2003. Bank Leumi refused.

No draws were made on the letters of credit before February 1, 2003. However, on February 5, 2003, UBS received two SWIFT messages from Bank Leumi, demanding payment on the two letters of credit. Both of the messages contained the following identical text:

> WE HEREBY DEMAND PAYMENT OF USD 500,000. - UNDER YOUR ABOVE STANDBY L/C. WE HEREBY STATE THAT THE AMOUNT DEMANDED REPRESENTS AN AMOUNT WHICH E.R.N. NO. 1 LTD HAS FAILED TO PAY US WHEN DUE. PLEASE CREDIT OUR ACCOUNT WITH YOU UNDER SWIFT ADVICE TO US, QUOTING OUR ABOVE REF NO.

In response to the demand, UBS paid $1 million to Bank Leumi and debited Buchbinder's account by seizing the collateral. Buchbinder sought reimbursement from Natanzon pursuant to the MOU, but Natanzon refused. Buchbinder then filed suit against UBS in the United States District Court for the Northern District of Illinois alleging UBS improperly debited his account

2

because "the Letters of Credit were expired and invalid at the time of the payment on February 5, 2003." Compl. in *Buchbinder v. UBS AG*, No. 03-CV-2846, Stipulation, Ex. 28 ¶ 14. UBS returned to Buchbinder the seized stock on May 29, 2003, and the $318,608 in cash on November 11, 2003. The litigation ended in a settlement agreement signed January 27, 2004.

Buchbinder filed this action October 15, 2003, seeking reimbursement from Natanzon under the MOU for the principal value of the seized assets ($1 million) plus costs, interest, and attorneys' fees. After UBS returned all of the seized assets, Buchbinder modified his demand such that he now seeks reimbursement from Natanzon only for: 1) interest Buchbinder failed to earn on the $318,608 during the period of approximately 278 days when UBS controlled the money; 2) attorneys' fees and other costs Buchbinder incurred in the litigation against UBS; and 3) attorneys' fees and other costs Buchbinder continues to incur in the instant litigation.

II.

The outcome of this case turns on the meaning of the words "any draw on the $1,000,000 letters of credit" in the MOU. Natanzon claims the money paid by UBS to Bank Lemui on February 5, 2003 was not a draw on the letters of credit under the MOU, which only contemplated timely and proper draws. Buchbinder contends the broad language ("*any* draw") of the MOU encompasses untimely payments. Although the issue is not free from doubt, I agree with Natanzon.[1]

---

[1] To the extent that Buchbinder is now contending that the letters of credit had not expired on February 5, 2003, his contention is inconsistent with the allegation he made in the suit against UBS in the United States District Court for the Northern District of Illinois that "the Letters of Credit were expired and invalid at the time of the payment on February 5, 2003." Moreover, his allegation in the Illinois action was correct. The letters of credit did expire January 31, 2003. The letters specifically required Buchbinder's written consent to modify the expiration date, and such consent was not given to extend the letters past January 31, 2003. UBS's typographical

Maryland follows the law of objective interpretation of contracts, whereby a court must determine what a reasonable person in the position of the parties would have thought the language of the agreement to mean. *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 844 A.2d 460, 469 (Md. 2004); *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999). In my view, a reasonable person in the position of the parties would not have understood "any draw on the . . . letters of credit" to include demands on letters that ceased to legally exist. If that had been the meaning of the words, in the MOU Nantanzon would have been assuming an obligation of infinite duration, unlimited by the express written terms of the letters of credit. Reasonable business people do not assume - or expect others to assume - such obligations.

A separate order granting Defendant's motion for summary judgment is being entered herewith.

<u>December 14, 2005</u>                           /s/                                              
Date                                              J. Frederick Motz
                                                  United States District Judge

---

error did not (and could not) breathe life into the letters of credit after their expiration date, because UBS never had the power to act unilaterally to extend the letters.

4